IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENN VERSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 14 CV 1187 |
| v. | ) |
| | ) Judge Thomas M. Durkin |
| C/O SMITH, NICKERSON, MARY DIANE | ) |
| SCHWARTZ, THEODORE FREDERICKS, | ) |
| and L. MYLES-JOHNSON, a/k/a IMIA MYLES, | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Glenn Verser filed this *pro se* lawsuit against four correctional officers and a physician at the Stateville Correctional Center in Crest Hill, Illinois ("Stateville").[1] Verser seeks damages under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. One of the defendants, Correctional Officer L. Myles-Johnson, a/k/a Imia Myles ("Myles"), has filed a motion to dismiss. For the reasons that follow, Myles's motion is denied.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim

---

[1] At the time of the events at issue, Verser was imprisoned at Stateville, serving a sixty-year prison sentence for murder, attempted armed robbery, and aggravated battery. *See U.S. ex rel. Verser v. Nelson*, 980 F. Supp. 280 (N.D .Ill. 1997). He was released from prison on or about December 8, 2015. *See* R. 113.

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In evaluating a *pro se* complaint, the Court applies a less stringent standard than formal pleadings drafted by lawyers. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).[2]

---

[2] Verser does not necessarily need the Court's indulgence of his *pro se* status, as shown by his litigation history, which includes the following lawsuits: (1) *Verser v. Duncan*, No. 15-cv-1263 (S.D. Ill. *filed* Nov. 13, 2015) (alleging violation of constitutional rights during a strip search and cell shakedown at Lawrence Correctional Center), 2015 WL 8531351 (S.D. Ill. Dec. 11, 2015) (holding on preliminary review under 28 U.S.C. § 1915A that case may proceed); (2) *Verser v. Gooding,* No. 14-cv-3060 (C.D. Ill. *filed* Feb. 18, 2014) (alleging retaliation, failure to protect and deliberate indifference to medical needs related to use of handcuffs, and excessive force by a correctional officer who allegedly kneed Verser in the stomach) (currently pending); (3) *Verser v. Hubbard*, No. 10-cv-7513 (N.D. Ill. *filed* Nov. 22, 2010) (claims stemming from single handcuffing allegedly in violation of medical permit), *motion to dismiss denied*, 2011 WL 2173754 (N.D. Ill. June 1, 2011), *motion for summary judgment granted in part*, 2012 WL 1655960 (N.D. Ill. May 9, 2012);

BACKGROUND

The following facts are alleged in the complaint and assumed true for purposes of Myles's motion to dismiss, with all reasonable inferences drawn in favor of Verser. *See Mann*, 707 F.3d at 877. On May 10, 2012, Verser needed to be transported outside the prison to attend a state court hearing in his criminal case. In preparing Verser for transportation to the courthouse, Myles[3] "applied single

---

(4) *Verser v. Turner*, No. 10-cv-7451 (N.D. Ill. *filed* Nov. 18, 2010) (alleging unconstitutional conditions of confinement and retaliation), *motion to dismiss granted in part and denied in part*, 2011 WL 2669299 (N.D. Ill. July 7, 2011), *summary judgment denied*, 2012 WL 1133733, at *5 (N.D. Ill. Apr. 2, 2012), *dismissed with leave to reinstate*, May 28, 2014; (5) *Verser v. Ghosh*, No. 10-cv-409 (N.D. Ill. *filed* Jan. 20, 2010) (deliberate indifference claim against correctional officers, prison doctors, and private physicians related to colonoscopy), *motions to dismiss denied*, 2010 WL 5014134 (N.D. Ill. Dec. 3, 2010); (6) *Verser v. Ruiz*, No. 07-cv-3293 (C.D. Ill. *filed* Nov. 5, 2007) (deliberate indifference claim related to alleged need for non-smoking environment and excessive force claim against correctional officers who allegedly punched Verser), defense jury verdict on excessive force claim entered on Apr. 13, 2011, *rev'd sub. nom, and remanded for new trial*, *Verser v. Barfield*, 741 F.3d 734 (7th Cir. 2013), second defense jury verdict entered on Apr. 15, 2015, *aff'd*, 2016 WL 1239258 (7th Cir. Mar. 30, 2016); (7) *Verser v. Rains*, No. 05-cv-167 (C.D. Ill. *filed* Mar. 4, 2005) (alleging retaliation for filing prior lawsuit, and deliberate indifference related to medical care for knee injury); (8) *Verser v. Snyder*, No. 99-cv-7375 (N.D. Ill. *filed* Nov. 22, 1999) (alleging inadequate medical treatment for knee injury), *motion to dismiss denied sub nom, Verser v. Elyea,* 113 F. Supp. 2d 1211 (N.D. Ill. July 27, 2000), *summary judgment granted,* May 21, 2002, *aff'd,* 80 Fed. App'x 522 (7th Cir. Nov. 7, 2003); (9) *Verser v. Snyder*, No. 99-cv-1782 (N.D. Ill. *filed* May 27, 1999) (dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)); (10) *Verser v. Washington,* No. 99-cv-1003 (C.D. Ill. *filed* Jan. 6, 1999) (alleging unconstitutional conditions of confinement), *motion to dismiss denied,* Dec. 12, 2011, *judgment entered pursuant to settlement,* Mar. 15, 2002.

[3] The complaint refers to "L. Johnson" as the correctional officer in question, but it has since been clarified that "L. Johnson" and Myles are one and the same. *See* R. 101.

handcuffs, using the black box.[4]" R. 5, ¶ 2. Verser "immediately informed [Myles] that he had a medical permit that prohibited the use of single cuffing." *Id.*, ¶ 3.[5] Another correctional officer (Defendant Smith) "approached and squeezed the handcuffs tighter saying 'that's what you get for suing Glenn Malone.'" *Id.*, ¶ 4. Malone was a defendant in a previous lawsuit Verser had filed. *Id.; see* n. 2, *supra*. Verser complained to a supervisor (Defendant Nickerson) about the handcuffs being

---

[4] A "black box" is something that is used by prison officials to prevent prisoners from picking the locks on their handcuffs. The Seventh Circuit has described it as:

> a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs. The box does not cover the hands, but is situated between them. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hands, restrained by handcuffs and the black box, are pulled against his stomach.

*Knox v. McGinnis*, 998 F.2d 1405, 1407 (7th Cir. 1993).

[5] In place of "single cuffing," a medical permit typically will prescribe "double-cuffing," which Judge Bucklo described in another case brought by Verser in 2010 as follows:

> In addition to prescribing pain medication, Dr. Zhang recommended a permit that would allow Verser to be restrained using a technique known as "double cuffing" for the next six months. This technique, which utilizes two sets of handcuffs locked together, is more comfortable and permits greater freedom of movement than single cuffing. Dr. Zhang thought double cuffing would make it easier for Verser "to change [the] angle or position of his arm without damage [to] his skin." Dr. Ghosh, the Medical Director at Stateville, signed a double cuffing permit for Verser on February 7, 2009.

*Verser v. Hubbard*, No. 10-cv-7513, 2014 WL 2514578, at *2 (N.D. Ill. June 3, 2014). As the Court understands it, a black box can only be used with single handcuffs. Therefore, a double-cuffing permit, if in fact one had been issued to Verser, would have prohibited the use of single cuffs with a black box.

4

too tight, telling the supervisor that he had a medical permit prohibiting the use of single cuffing. *Id.,* ¶ 5. The supervisor called a physician employed by the correctional center (Defendant Schwartz) to ask about the medical permit. The physician responded "we don't honor single cuff permits." *Id.,* ¶ 6. The supervisor checked the tightness of the handcuffs, and directed Myles to loosen the cuffs. *Id.,* ¶ 8. Myles refused to do so. *Id.* Verser entered the bus and continued to complain about the handcuffs. When Verser exited the bus, he repeated his complaints to Myles, who once again ignored him. *Id.,* ¶ 12. After his court appearance, Verser again complained to Myles "that the handcuffs were extremely tight." *Id.,*¶ 15. She replied, 'I don't care.'" *Id.* Verser suffered injuries as a result of the single cuffing and defendants' refusal to loosen the handcuffs after he complained. Those injuries led to a prison physician later prescribing Verser with an indefinite "double cuff/in the front permit." *Id.,* ¶ 18.

## DISCUSSION

### A. EIGHTH AMENDMENT

In her motion to dismiss, Myles argues that the mere application of single handcuffs and a black box for purposes of transporting Verser outside the prison fails to state a claim under the Eighth Amendment's prohibition on cruel and unusual punishment. Myles does not cite any case law in support of this argument. Nevertheless, Myles is correct that the use of single handcuffs with a black box in and of itself is not a violation of the Eighth Amendment. The leading case on this is the Fifth Circuit's decision in *Fulford v. King,* 692 F.2d 11, 14 (5th Cir. 1982),

5

holding that the use of a black box is justified "by the greater risk of escape when prisoners are outside the institution and [by] the reduced number of guards available to oversee the prisoners during those journeys." The Seventh Circuit cited to *Fulford*, stating that it was "clearly established" law "that use of the black box in the transportation of prisoners outside the prison d[oes] not violate the eighth amendment." *Knox*, 998 F.2d at 1410. Numerous other courts have held the same. *See, e.g., Moody v. Proctor,* 986 F.2d 239, 241 (8th Cir. 1993) ("a policy requiring all prisoners to wear a black box when outside of the prison does not violate the Eighth Amendment because, although the black box causes discomfort, its use is penologically justified"); *Treece v. Andrews*, 2005 WL 5444344, at *7 (W.D. La. Mar. 2, 2005) (dismissing black box claim as being frivolous upon review under 28 U.S.C. § 1915(e)(2)(B)(i), holding that "[t]here is no question but that the use of the complained of restraining devices constitutes a justified security measure considering that plaintiff is away from the prison setting").

### 1. MALICIOUS AND SADISTIC STANDARD

The problem with Myles's argument is that Verser does not allege an Eighth Amendment violation simply because Myles used single cuffs with a black box. He alleges an Eighth Amendment violation because Myles used single cuffs with a black box *despite his informing her* that he had a medical permit requiring that only double cuffs be used on him. *See, e.g., Perez v. Jackson,* 2000 WL 893445, at *2 (E.D. Pa. June 30, 2000) ("The issue presented here is not the need for a type of restraint which is inherently discomforting, but the unnecessary use of a painful means of

6

restraint when an alternative is available and specifically prescribed by a prison physician.").

The Court must assume for purposes of Myles's Rule 12(b)(6) motion to dismiss that Verser had a medical permit requiring the use of double cuffs,[6] and that he told Myles about it when she put the single cuffs and black box on him. In Eighth Amendment excessive force cases, "'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). This is known as the *Whitley* test. *See See Hudson,* 503 U.S. at 6-7; *Whitley v. Albers*, 475 U.S. 312

---

[6] Judge Bucklo indicates in a prior opinion that Verser had a medical permit that was issued on February 2009, but expired six months later. *Hubbard*, 2014 WL 2514578, at *2. The incident at issue here occurred more than three years later, on May 10, 2012. Verser attaches a copy of a medical permit to his complaint that would cover the time period in which the incident at issue occurred, but it appears to have been issued by Menard Correctional Center, not Stateville. Also, the copy of the Menard medical permit attached to the complaint does not appear to have a physician's signature, although the Court cannot tell whether the space provided for a signature is blank or whether the copy filed with the court is simply difficult to read. Verser also attaches to his complaint a copy of a letter from the prison administrative review board dated April 8, 2013 (approximately one year after the incident at issue), acknowledging that "[r]ecords indicate Offender Verser had a medical permit for medical restraints from Stateville CC dated January 12, 2012 to January 12, 2013." R. 5 at 10. That medical permit purportedly "prohibit[ed] single cuffing," *id.,* but a copy does not appear to be included with the complaint. Instead, Verser attaches to his complaint a copy of another medical permit issued by the Lawrence Correctional Center. The start date on the Lawrence medical permit is June 3, 2013, and the expiration date is listed as "indefinite." R. 5. Although it was issued by a different correctional institution, the Lawrence medical permit likely is the one Verser alleges was issued as a result of the events occurring at Stateville that are at issue here.

7

(1986).[7] Although *Fulford* was decided before *Whitley,* its holding that use of a black box does not as a matter of law violate the Eighth Amendment is not inconsistent with *Whitley*. *Fulford* specifically left open the possibility that a black box might be

---

[7] Two different Eighth Amendment standards potentially apply here: (1) the *Whitley* standard, and (2) the "deliberate indifference" standard of *Farmer v. Brennan*, 511 U.S. 825 (1994). Verser references the deliberate indifference standard in the heading of his complaint, but it is not clear whether he intends to assert that claim against the correctional officer defendants (as opposed to only against the physician defendant). *Compare* R. 5, ¶ 7 (alleging deliberate indifference only against the medical defendant), *with id.*, ¶ 18 (using term "deliberate indifference" indiscriminately against "defendants"). The Supreme Court has said that the deliberate indifference standard "is *inappropriate* when authorities use force to put down a prison disturbance" because in those situations, prison officials "must balance the threat unrest poses . . . against the harm inmates may suffer if guards use force." *Whitley*, 475 U.S. at 320-21 (emphasis added). As a result, an Eighth Amendment violation in those situations requires a more culpable state of mind," namely, the "malicious and sadistic" state of mind. *Id.* The handcuffing incident at issue here did not occur in the context of a prison disturbance, but it did occur in the context of a situation that raises legitimate security concerns for prison officials. For this reason, the *Whitley* standard appears to be the more appropriate one. *See, e.g., Brathwaite v. Klein*, 2013 WL 3814268, at *6 (D. Del. July 19, 2013) (applying *Whitley* standard to allegation that use of single cuff in face of medical permit violated Eighth Amendment); *Starbeck v. Linn Cnty. Jail*, 871 F. Supp. 1129, 1147-49 (N.D. Iowa 1994) (applying *Whitley* standard to inmate's allegation that use of a "black box" while transporting him for medical care constituted an excessive use of force in violation of the Eighth Amendment). Nevertheless, the Seventh Circuit has applied the deliberate indifference standard to a handcuffing claim in at least one case. *See Stewart v. Special Adm'r of Estate of Mesrobian*, 559 Fed. App'x 543, 549 (7th Cir. 2014) (affirming dismissal of inmate's claim against correctional officers because "[h]is allegations do not plausibly suggest that [the officers] were deliberately indifferent to his complaints of severe pain" from use of security box). But *Stewart* does not specifically address the question of which of the two standards was the more appropriate one given the facts in that case. The Court will apply what it deems to be the more appropriate standard for Verser's Eighth Amendment claim against the correctional officers—the *Whitley* standard. The parties may revisit that question, however, if necessary to decide any summary judgment motions that may be filed. *See DeSpain v. Uphoff*, 264 F.3d 965, 976 (10th Cir. 2001) (decision as to which Eighth Amendment standard is the more appropriate standard is important because the *Whitley* standard requires a higher state of mind than the deliberate indifference standard).

unconstitutional in certain cases if its use by prison officials was "arbitrary," "punitive," or "retaliatory." *Fulford,* 692 F.2d 11, 14. Thus, under *Whitley* and consistent with *Fulford* and *Knox*, if the complaint's allegations plausibly suggest that Myles used a black box not in good faith but maliciously, sadistically, and in retaliation for Verser's previously filed lawsuit, then Verser has stated a legally valid Eighth Amendment claim. *See, e.g. Dominguez v. Moore*, 149 Fed. App'x 281, 283-84 (5th Cir. 2005) (unpublished) (acknowledging prior precedent holding generally that use of a black box is not unconstitutional, but nevertheless concluding that the plaintiff had alleged facts from which it could be inferred that the black box was used against him for punitive rather than security reasons, and, as a result, reversing the district court's ruling which had dismissed the plaintiff's Eighth Amendment claim as frivolous).

Here the inference is plausible that Myles used a black box maliciously and sadistically because Verser alleges that (1) he had a permit and told Myles about it; (2) another officer, while tightening the handcuffs, said something indicating a possible retaliatory motive for doing so, and it can be inferred from the complaint that Myles was present and heard/witnessed this other officer's words and conduct; and (3) after the other officer made the retaliatory comment, Myles refused to loosen the cuffs even though a supervisor instructed her to do so. It is not too farfetched to infer a malicious and sadistic motive from a refusal to obey an order given by a supervisor. This alleged refusal, if believed, speaks both to whether Myles initially placed the single cuffs with a black box on Verser knowingly

9

disregarding Verser's medical permit for reasons that were malicious and sadistic, and also to whether Myles later acted maliciously and sadistically to cause harm when she repeatedly ignored Verser's complaints about the handcuffs being too tight.

## 2. *DE MINIMIS* ISSUE

Sidestepping the issue of whether Verser has alleged facts that plausibly suggest Myles used single cuffs with a black box maliciously and sadistically rather than for actual security reasons, Myles focuses instead on the argument that Verser suffered at most a *de minimis* injury. But the Supreme Court has said that it is error to "giv[e] decisive weight to the purportedly *de minimis* nature of [an inmate's] injuries." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

> [T]he Fourth Circuit's earlier decision in *Norman v. Taylor*, 25 F.3d 1259 (1994) (en banc), [ ] approved the practice of using injury as a proxy for force. According to the Fourth Circuit, *Hudson*[,503 U.S. 1] "does not foreclose and indeed is consistent with [the] view . . . that, absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." 25 F.3d at 1263.
>
> The Fourth Circuit's strained reading of *Hudson* is not defensible. This Court's decision did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from "significant" to "non-de minimis"—whatever those ill-defined terms might mean. Instead, the Court aimed to shift the "core judicial inquiry" from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and "was applied . . . maliciously and sadistically to cause harm." 503 U.S. at 7. To conclude, as the District Court did here, that the absence of "some arbitrary quantity of injury" requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry.

*Wilkins*, 559 U.S. at 39. In other words, the degree to which Verser was injured is not controlling of his Eighth Amendment claim. Instead, "a court should examine a variety of factors in conducting this inquiry, including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the *extent of the injury suffered by the prisoner*." *DeWalt*, 224 F.3d at 619 (emphasis added) (citing *Hudson,* 503 U.S. at 7). While a *de minimis* injury might "strongly suggest" that the force applied was *de minimis, Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001), it is not itself dispositive such that dismissal on the pleadings is warranted. *See Majette v. GEO Group, Inc.*, 2009 WL 2434805 (E.D. Va. Aug. 6, 2009) (rejecting defendants' *de minimis* argument from handcuffing incident as raising issues more appropriately resolved at summary judgment stage).

### 3. VERSER'S FAILURE TO ALLEGE HE TOLD MYLES OR MEDICAL PERSONNEL ABOUT ANY PHYSICAL INJURY OR DISCOMFORT FROM THE HANDCUFFS

Citing *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), Myles also argues that Verser does not allege that he ever told her about any injury, numbness, or pain from the handcuffs, or that he ever sought medical treatment for those things. In *Tibbs,* the Seventh Circuit noted that it "ha[d] on occasion recognized valid excessive force claims based on overly tight handcuffs." *Id.* at 666. The court rejected such a claim in that case, however, because

11

> Tibbs complained to Officer Kooistra once about his handcuffs without elaborating on any injury, numbness, or degree of pain; Tibbs was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury. Tibbs cites no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations.

*Id.*

To begin with, *Tibbs* deals with an excessive force claim under the Fourth Amendment. But even if the same standard applies to excessive force claims in the Fourth Amendment context as those under the Eighth Amendment (a question the Court does not decide),[8] *Tibbs* was decided on *summary judgment.* Here, the Court must consider only the allegations of Verser's complaint. And he alleges that he told Myles about his medical permit, he complained to her three times that the cuffs were too tight, Myles ignored his complaints and refused to loosen the cuffs, he suffered injuries from the incident and, as a result of those injuries, he was later prescribed an indefinite "double cuff/in the front. These facts are sufficient to state a plausible excessive force claim. *See Verser v. Hubbard*, 2011 WL 2173754, at *2 (N.D. Ill. June 1, 2011) (denying motion to dismiss excessive force claim where Verser alleged he informed the correctional officers more than once that the handcuffs were too tight, the officers refused to do anything, and he suffered

---

[8] The standard under the Fourth Amendment is whether the arresting officer's use of force was objectively reasonable, *Graham v. Connor*, 490 U.S. 386, 394-95 (1989), whereas the standard under the Eighth Amendment is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," *Whitley*, 475 U.S. at 320-21 (internal quotation marks and citation omitted).

numbness and nerve damages); *Salyers v. Alexandria Police Dep't*, 2016 WL 2894438, at *3 (S.D. Ind. May 18, 2016) ("a body of law has developed holding that if an officer knows of a preexisting injury or medical condition that will be aggravated by handcuffing an arrestee behind his back, the officer is obligated to consider that information, together with the other relevant circumstances, in determining whether it [is] appropriate to handcuff [the arrestee in such a fashion.]") (internal quotation marks and citation omitted).

The fact that Verser does not allege additional details in support of his excessive force claim, such as how long he was handcuffed, the degree to which he elaborated on his pain when he complained to Myles, the degree to which he manifested any physical injury from the handcuffs, and whether he sought medical treatment afterwards, does not warrant dismissal. Verser "does not have to plead evidence." *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). "[A] a complaint is not required to allege all, or any, of the facts logically entailed by the claim," nor does it "fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrong." *Id.* Myles's arguments are more appropriately made on a motion for summary judgment, not a motion to dismiss. *See, e.g., Perez,* 2000 WL 893445, at *2.[9]

---

[9] In *Perez*, the court denied a motion to dismiss an excessive force claim, reasoning that, "[f]rom plaintiff's allegations and inferences reasonably drawn therefrom, it appears that defendant deliberately disregarded the direction of a prison doctor to use a type of handcuff which would not exacerbate a condition of his hands making him unduly sensitive and ignored his complaints of pain while he was in intake prior to leaving the institution. One can reasonably infer that the prison doctor would not have prescribed the use of plastic handcuffs unless they were in fact

13

### 3. FAILURE TO INTERVENE

Finally, Myles suggests that Verser's Eighth Amendment claim should be separated into two different parts: (1) the initial placement of the handcuffs and black box on Verser; and (2) Myles "failure to intervene" after another correctional officer tightened the handcuffs. Characterizing Verser's Eighth Amendment claim after the initial placement of the handcuffs as a "failure to intervene" in another correctional officer's use of force, however, belies Verser's allegations that Myles also refused to loosen the handcuffs after her supervisor told her to do so and ignored Verser's repeated complaints that the handcuffs were too tight. These allegations state a plausible claim of excessive force against Myles, even if the handcuffs were tightened by another officer. *See, e.g., Bane v. Virginia Dep't of Corr.*, 267 F. Supp. 2d 514, 530-31 (W.D. Va. 2003) (holding that, where plaintiff alleged that one correctional officer used excessive force in placing him in handcuffs "with full knowledge of the medical waiver" and second officer "took part in the events leading up to the handcuffing by the first officer and then stood by while the first officer handcuffed the plaintiff, the second officer also may be liable for excessive force "even though he did not lay a hand on the Plaintiff").

### B. RETALIATION CLAIM

The last issue for the Court is Verser's retaliation claim. As a general proposition, prison officials may not retaliate against a prisoner for filing lawsuits

---

available. It is possible that defendant can show such cuffs are not sufficiently secure or reliable for a trip outside the prison, but plaintiff need not allege otherwise to survive a motion to dismiss." *Perez,* 2000 WL 893445, at *2.

against them. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Recognizing that any perceptible slight might be deemed retaliatory in the prison setting, the Seventh Circuit has emphasized that

> not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred. *Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss). *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient"). Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline."

*Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)..

The complaint alleges that Verser engaged in the protected activity of filing a lawsuit in 2010 against several correctional officers that related to another handcuffing incident (the *Hubbard* case, quoted earlier in this opinion). The complaint further alleges that another officer, who is also a defendant here, Smith, approached Verser after Myles put the single cuffs on him and tightened those cuffs, saying "this is what you get for suing Malone." The complaint then alleges that Verser complained to Nickerson about the tightness and repeated what he told Myles about having a medical permit, and that Nickerson called a prison physician to find out about the permit and then directed Myles to loosen the cuffs. The complaint alleges that Myles refused to follow Nickerson's order and did not loosen the cuffs. This all took place *one day after* Judge Bucklo issued a ruling in *Hubbard*

15

denying Officer Malone's motion for summary judgment on Verser's excessive force claim. While it was Smith, and not Myles, who allegedly tightened Verser's handcuffs and said "this is what you get for suing Malone," the chronology of events, including Myles's alleged refusal to loosen the cuffs at the direction of a supervisor—a refusal that occurred *after* Smith made the comment about Malone—suggests the possibility that Myles shared the retaliatory intent of Smith. Therefore, the Court also will not dismiss Verser's retaliation claim against Myles at this stage of the proceedings.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss filed by Defendant Myles, R.127, is denied without prejudice to raising the same issues again in a motion for summary judgment.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: July 5, 2016