# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

Glenn Verser,                            )
                                         )
            Plaintiff,                   )
                                         )        Case No. 14 C 1187
      v.                                 )
                                         )
                                         )        Judge Thomas M. Durkin
Kanji Smith, Jerome Nickerson,           )
Theodore Fredericks, Imia Myles,         )
a/k/a Imia Myles-Johnson, and            )
Mary Diane Schwarz, P.A.,                )
                                         )
            Defendants.                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff Glenn Verser was an inmate in the custody of the Illinois Department of Corrections when he brought this *pro se* Section 1983 lawsuit alleging that Defendants violated his constitutional rights. Currently before the Court are two motions for summary judgment, one filed by the correctional officer defendants (Smith, Nickerson, Fredericks and Myles[1]), and one filed by the medical defendant (Schwarz). *See* R. 148, 153. Plaintiff has responded to both motions (R. 159, 161). For the reasons stated herein, Defendants' motions are granted.

---

[1] There has been come confusion in the record over whether Defendant Myles's last name is Myles or Johnson. *See* R. 155-3 at 3. The Court understands that her correct name is Imia Myles, and therefore will refer to her accordingly.

## I.    Factual Background

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On May 10, 2012, Verser was an inmate temporarily housed at the Stateville Northern Reception and Classification Center ("NRC"). That morning, he was to be transported on a court writ from the NRC to Cook County Circuit Criminal Court. None of the defendants have any recollection of the events at issue, which happened more than four years ago. Therefore, the Court must rely on Verser's account of that day.

According to Verser, he was in the holding cell waiting to be put on the bus for transport to court when Officer Myles approached him and indicated she was about to restrain him using a single pair of handcuffs and a black box.[2] Verser informed Officer Myles that he had a medical permit allowing the use of double cuffs.[3] Verser carried a copy of the medical permit with him, and he showed it to

---

[2] Verser describes single handcuffing with a black box as being the standard procedure by which inmates are handcuffed. It involves applying a single set of handcuffs to the inmate's wrists with the inmate's hands held over each other, one palm facing up and one palm facing down. *See* R. 155-2 at 8. A black box is a "mechanism 'applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets.'" *Knox. v. McGinnis*, 998 F.2d 1405, 1407 n.3 (7th Cir. 1993) (citation omitted).

[3] According to Verser, double-cuffing is when two sets of handcuffs are connected together and used as one single cuff to provide a wider range of motion. *See* R. 155-2 at 14. Verser testified that he obtained the medical permit for double handcuffing

Officer Myles. Officer Myles informed her supervisor, Officer Nickerson, about Verser's medical permit. Verser showed Nickerson the permit, who then placed a telephone call to Defendant Schwarz. Schwarz is employed by Wexford Health Sources, Inc. as a Physician Assistant ("PA") at the NRC. Nickerson explained to Schwarz that Verser had a medical permit and he described the permit to her over the telephone *See* R. 155-2 at 11. Verser was standing next to Nickerson when this telephone conversation took place, but he could not hear Schwarz's original response. *Id.* Nickerson asked Schwarz to repeat what she had said and then held the phone to Verser's ear. *Id.* at 9, 11. Verser heard Schwarz say "we don't honor medical permits in Stateville." *Id.*

Verser was deposed twice in this case, approximately one year apart. At his first deposition, Verser was very specific that he had not yet been handcuffed when Nickerson made the phone call to Schwarz, and that the handcuffing took place after Nickerson hung up the phone and directed Officer Myles to restrain Verser

---

after he was injured from another handcuffing incident occurring in 2009, when he also was being transported outside the prison on a court writ. The correctional officers in charge on that day applied the handcuffs overly tight for 13 consecutive hours, causing him "extreme pain," and, when they finally removed the handcuffs, either his right hand or just his thumb had gone completely numb. *Id.* at 12-13. As a result of the injury he sustained in 2009 (to his thumb and/or right hand, *see id.* at 14), he obtained a medical permit for double cuffing. That permit was not the one Verser presented to the correctional officers here, because, according to Verser, it already had expired. Verser testified that the permit at issue here, which is attached as Exhibit B to the complaint, was a renewal of the original one, *id.* at 13, although the Court notes that Exhibit B has a check mark in the box next to the words "New Order" rather than in the box next to the word "Renewal." *See* R. 5 at 9.

according to the usual practice. *See* R. 155-2 at 16. At this point, Officer Myles cuffed Verser's hands in the front using a single pair of handcuffs. Verser was not asked about Officer Smith at this first deposition. At his second deposition, Verser again was very specific but this time testified that he already was wearing the handcuffs when Nickerson made the phone call to Schwarz. He stated that he showed Officer Myles the medical permit but she did not acknowledge it and instead continued to place the handcuffs on him. *See* R. 155-3 at 4, 6. Verser testified that as Myles was putting on the handcuffs, Officer Smith approached and squeezed the handcuffs tighter, saying "that's what you get for suing Malone." The reference to Malone was to another correctional officer against whom Verser had filed an earlier § 1983 claim arising out of the 2009 handcuffing incident. *See* footnote 3. Verser testified that he did not say anything to Officers Smith or Myles about Smith's comment or tightening of the handcuffs. Instead, he called the medical permit to the attention of Nickerson. *Id.* at 7. After Nickerson made the phone call to Schwarz and told Verser his medical permit could not be honored, *id.* at 4, Verser complained to Officer Nickerson that the handcuffs were too tight. *Id.* at 6. Officer Nickerson checked the cuffs, and told Officer Myles to loosen them. *Id.* at 7, 4. According to Verser, Officer Myles ignored Officer Nickerson's order, and Officer Nickerson reacted by telling Verser that he would loosen the handcuffs once Verser got on the bus. *Id.* at 5.

Officer Myles was assigned to accompany Verser to court. Verser testified that he continued to complain to Officer Myles throughout the day that the handcuffs were too tight. *Id.* at 6. He also complained to the state court judge before whom he appeared and to other correctional officers, including Nickerson, Smith, and Frederickson. *Id.; see also* R. 155-2 at 20. None of his complaints resulted in any action being taken to loosen the handcuffs. He remained handcuffed for approximately nine hours until he got back to the NRC. Verser testified that the next day he suffered from pain in his hand, and that he asked to be examined by a doctor but his request was either refused or ignored. R. 155-2 at 8, 18. He believes that the injury done to his hand and/or wrist in 2009 was made worse by this incident, but he has not submitted any medical evidence to support that belief. *See* R. 155-2 at 18. He admits that he received no medical treatment as a result of the incident, although he apparently was issued a new medical permit (Exhibit D to complaint), which was later honored by prison officials when he went to court on future writs. *Id*.

## II.     Analysis

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the

suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

### A. EIGHTH AMENDMENT CLAIM AGAINST CORRECTIONAL OFFICER DEFENDANTS

Verser alleges that Officers Smith, Nickerson, Fredericks and Myles violated the Eighth Amendment when they refused to honor his permit for medical restraints, intentionally applied his handcuffs too tight, and refused to loosen the handcuffs when he complained. The Court previously held that it was not clear whether Verser's Eighth Amendment claim against the correctional officer defendants was governed by the excessive force standard set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), or the deliberate indifference standard of *Farmer v. Brennan*, 511 U.S. 825 (1994). *See* R. 136 at 8 n.7 (*Verser v. Smith*, 2016 WL 3595727, at *3 n.7 (N.D. Ill. July 5, 2016)). Verser's allegations give rise to a situation where legitimate security concerns intersect with a prisoner's alleged medical needs, thus implicating both the excessive force standard and the deliberate indifference standard. The Court therefore finds it necessary to break down Verser's Eighth Amendment handcuff claim into stages, in order to apply the standard most appropriate for each stage.

### 1. DEFENDANTS NICKERSON AND MYLES—ALLEGED REFUSAL TO HONOR MEDICAL PERMIT

The Court previously held that Verser's allegation that he had a medical permit for double handcuffing raised the possibility that the correctional officer defendants ignored that permit in bad faith, in which case Verser might have a valid Eighth Amendment claim. *See* R. 136 at 9-14 (*Verser*, 2016 WL 3595727, at *4) (citing *inter alia Dominguez v. Moore*, 149 Fed. App'x 281, 283-84 (5th Cir. 2005) (allegations that the black box was used against inmate for punitive rather than security reasons stated valid claim)). Now that discovery has taken place, it is clear that the only correctional officer defendants against whom this claim can be made are Myles and Nickerson because they are the only officers who the record shows had knowledge of Verser's medical permit. But even as to those two defendants, Verser has failed to raise any disputed issue of fact. It is undisputed that, when Verser presented Myles and Nickerson with his medical permit for double front cuffing, they did not simply ignore it. Instead, Myles informed Nickerson, and Nickerson contacted the medical unit. Nickerson spoke with P.A. Schwarz, who instructed him that Verser's claimed need for medical restraints could not be honored. Under these circumstances, it cannot be said that Myles and Nickerson refused to honor Verser's medical permit "maliciously and sadistically for the very purpose of causing harm" (*Whitley*, 475 U.S. at 320-21 (internal quotation marks and citation omitted) or that their conduct constituted deliberate indifference to Verser's serious medical needs (*Farmer*, 511 U.S. at 828).

Nickerson and Myles have provided uncontradicted testimony that the proper procedure in circumstances when "a prisoner presents a medical permit from another correctional facility" is to consult with the Health Care Unit ("HCU") "regarding the validity of the permit or the need for an evaluation" rather than to rely solely on the paper permit presented by the inmate, because "inmate's [sic] will often present doctored permits or be issued permits for medical restraints that are not needed and would not be approved by a Stateville physician." R. 155-5 at 2 (Nickerson Declaration); *see also* R. 155-7 at 2 (Myles Declaration) (same). Verser's testimony establishes that this is exactly what Nickerson did. He called the HCU and spoke with Schwarz, explaining to her that Verser claimed that he needed medical restraints and had a "permit." Verser testified that Schwarz told Nickerson not to honor the permit. Verser's testimony thus demonstrates that Nickerson and Myles followed the correct procedure in contacting Schwarz and that they did not honor Verser's medical permit *at the direction of* Schwarz. As a result, Nickerson's refusal to honor Verser's medical permit (and farther down the chain of command, Myles's refusal to honor that permit) cannot give rise to an Eighth Amendment violation. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

## 2. DEFENDANTS NICKERSON, MYLES, SMITH, AND FREDERICKSON--FAILURE TO LOOSEN HANDCUFFS

The Court also has little difficulty concluding that Verser has not raised a disputed issue of fact regarding whether any of the correctional officer defendants violated the Eighth Amendment by failing to loosen the handcuffs when Verser complained they were too tight. Both because of Schwarz's direction to Nickerson and Myles to disregard Verser's medical permit, and because there is no evidence that any other correctional officer was even aware of Verser's medical permit, Verser cannot show that the correctional officer defendants were deliberately indifferent to his serious medical needs. *See Riccardo v. Rausch,* 375 F.3d 521, 526 (7th Cir. 2004) (deliberate indifference standard means that prison official must have subjective awareness of the inmate's serious medical need).[4] Therefore, the

---

[4] To establish liability on a deliberate indifference claim, Verser also would have to establish that he had "an objectively serious medical need." *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000). An objectively serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (citation and internal quotation omitted)). Verser testified that he had a serious medical need because of the previous injury he sustained to his right hand after the 2009 cuffing incident. But Verser relies entirely on his testimony regarding the seriousness of his hand injury, including his testimony that he was granted a medical permit for double cuffing because of that injury. The Court is not convinced that this testimony, even if combined with the documents attached to the complaint reflecting that Verser was at certain points in time granted a medical permit for double cuffing, is sufficient for a jury to find in Verser's favor on the question of whether he had an objectively serious medical condition on May 10, 2012 regarding his wrist or hand. But the Court will nevertheless assume that it is for present purposes.

Court will measure Verser's claim based on failure to loosen the handcuffs against the excessive force standard instead. Under this standard, Verser must show that the correctional officers' conduct did not constitute a "good-faith effort to maintain . . . discipline [or security]," but rather was done "maliciously and sadistically to cause harm." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (internal quotation marks omitted) (quoting *Whitley*).

Courts must be reluctant to interfere with security measures instituted by prison officials, especially when the issue is transport outside the prison facility. Such measures do not violate the Eighth Amendment absent a showing that they "constitute[ ] a wanton infliction of pain that is totally without penological justification." *Hanna v. Lane*, 610 F. Supp. 32, 35 (N.D. Ill. 1985). No such showing has been made here. The only evidence in the record is Verser's testimony that he complained about the handcuffs being too tight and no one loosened them. Verser was handcuffed according to standard procedure required for all prisoners when being transported outside the prison facility. There is no evidence suggesting that any of the correctional officers' conduct in failing to loosen the handcuffs when Verser complained about their tightness was without penological justification. Therefore, Verser's Eighth Amendment claim against the correctional officer defendants for not loosening the handcuffs also fails as a matter of law. *See, e.g., Knox v. McGinnis*, 998 F.2d 1405, 1412 (7th Cir. 1993) (approving prison officials' use of restrictive mechanisms such as handcuffs, "including the black box, on

special status prisoners when they are taken outside the prison or when they move inside the prison to particularly vulnerable areas such as the law library or visiting areas"); *Moody v. Proctor,* 986 F.2d 239, 241 (8th Cir. 1993) (per curiam) ("a policy requiring all prisoners to wear a black box when outside of the prison does not violate the Eighth Amendment because, although the black box causes discomfort, its use is penologically justified").

### 3. DEFENDANTS SMITH AND MYLES--ALLEGEDLY MALICIOUS TIGHTENING OF THE HANDCUFFS

Verser's testimony regarding Officer Smith's tightening of the handcuffs presents a different excessive force claim than the claim against all of the correctional officers based on their refusal to loosen the handcuffs. Verser testified that Officer Smith approached when Officer Myles was placing the handcuffs on him and tightened the handcuffs to the point where he was in pain, stating "this is what you get for suing Malone." As previously noted, the excessive force standard, rather than the deliberate indifference standard, applies to this aspect of Verser's Eighth Amendment claim.[5] Also as previously noted, the issue in the excessive force context is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks and citation omitted). Officer

---

[5] The record is somewhat unclear whether Officer Smith approached Verser before or after the phone call to P.A. Schwarz, but there is no evidence that Officer Smith knew about, let alone disregarded, Verser's medical permit.

Smith cannot dispute Verser's account of what happened because he does not remember the events of that day. However, he states in a declaration that he had no knowledge of any lawsuit that Verser brought against Glenn Malone until Verser filed the present complaint against him. R. 155-4. at 1. This testimony juxtaposed against Verser's testimony that Officer Smith mentioned the lawsuit when he tightened the handcuffs creates a disputed issue of fact regarding Officer Smith's subjective motives. That disputed fact issue cannot be resolved on summary judgment.

Nevertheless, the Court grants summary judgment in favor of Officer Smith for a different reason. As the Supreme Court has explained, not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotation marks and citation omitted). Here, the Court concludes that, even if a jury were to believe Verser's account of what happened and find that Officer Smith acted with a malicious intent when he tightened Verser's handcuffs, no reasonable jury could conclude on the facts presented that the physical force used by Smith was constitutionally excessive. The constitutional excessiveness issue turns on a variety of factors, including "the need for an application of force, the relationship between that need and the force applied,

the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. With regard to the last of these factors, while significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force." *DeWalt*, 224 F.3d at 619-20 (internal citations omitted).

In *DeWalt*, the Seventh Circuit applied this test in a manner this Court finds dispositive here. *DeWalt* involved an excessive force claim against a correctional officer also named Smith (the Court cannot tell if it is the same officer as the defendant in this case or a different one with the same last name). The Seventh Circuit held as a matter of law that:

> Officer Smith's simple act of shoving Mr. DeWalt qualifies as the kind of de minimis use of force that does not constitute cruel and unusual punishment. . . . The shove was a single and isolated act, unaccompanied by further uses of force. Moreover, the bruising Mr. DeWalt allegedly suffered does not appear to have been particularly serious. Although we certainly do not condone the unjustified use of force by prison guards, Mr. DeWalt's allegations regarding Officer Smith's use of force against him fall short of what is required to state a claim for excessive force under the Eighth Amendment.

224 F.3d at 620.

Similarly here, the Court does not condone Officer Smith's conduct (assuming Verser's allegations are true). But Verser's rendition of what happened consists of a single act of tightening Verser's handcuffs unaccompanied by any further use of force. Moreover, the record is insufficient to show that Verser suffered any serious

injury from the tightening. Verser testified that he experienced pain which lasted through the next day. The more permanent injuries to his hand to which he testified were sustained as a result of the 2009 cuffing incident for which he previously sued.[6] He admitted that he currently does not suffer any pain in his hand except for when he is handcuffed, which he suffers because of the previous injury. *See* R. 155-2 at 19.[7]

---

[6] While Verser testified that the preexisting injury to his hand was exacerbated by the incident at issue here, that testimony is vague at best and insufficient in any event to establish a permanent lasting injury from the 2012 cuffing incident. *See* R. 155-2 at 18 ("Q. . . . [W]ere you injured as a result of this cuffing? A. Absolutely. Like I said, it started –in 09 it started with my thumb. Now since then the bridge of my hands just – I'm a – my field of occupation is construction and I have about 50 percent use of my hand."). Verser's further testimony that his wrist is worse now than it was in 2009, *id*. at 18, also is conclusory and unsupported by any specific medical facts or evidence. While Verser asserts he sought medical attention after the incident but was refused, he has presented no evidence to back up that claim.

[7] This Court's previous ruling denying Officer Myles's motion to dismiss rejected the argument that Verser's Eighth Amendment claim must be dismissed on the pleadings because Verser had not alleged facts to support a finding that he suffered anything other than a de minimis injury. The Court's ruling was based primarily on the fact that the extent to which Verser had been injured was not clear from the complaint's allegations. In addition, the Court also noted that the Supreme Court in *Hudson* established that a particular use of physical force cannot be considered de minimis as a matter of law solely because the injury suffered by the inmate might be characterized as de minimis. The Court could not determine based on the complaint whether the use of force at issue here was de minimis given that the allegations did not necessarily reveal the entire circumstances surrounding Verser's handcuffing, including the degree of injury suffered by Verser, and the pleading of more specific facts or evidence was not required. The Court's prior ruling on the pleadings, however, does not prevent the Court from resolving the de minimus force issue now, on summary judgment.

The Seventh Circuit said in *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001), that a de minimis injury "strongly suggests that the force applied . . . was *de minimis.*" Moreover, courts outside this jurisdiction have suggested that, in the context of a handcuffing claim, proof of serious or permanent injuries is a necessary element. For example, the Eighth Circuit held in *Chambers v. Pennycook*, 6341 F.3d 898, 907 (8th Cir. 2011), that "there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force," but specifically noted that this general rule did *not* apply where handcuffing was involved. Handcuffing, the court said, was different because it "inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied. To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more." *Id.; see also United States v. Rodella,* 804 F.3d 1317, 1328-29 (10th Cir. 2015) (holding that there is no "de minimis injury requirement for Fourth Amendment excessive force claims *in cases which involve more than handcuffing*") (emphasis added); *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries"); *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (stating that "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal"); *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000) (holding as a matter of law that the

amount of force used during an arrest to handcuff a suspect was not excessive and would not defeat an officer's qualified immunity where the resulting injury was merely bruising); *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir. 1990) ("Foster's allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support his claim of excessive force.").[8]

This body of case law involves handcuffing claims in the Fourth Amendment context. Whereas in the Fourth Amendment context, arrests can involve a variety of

---

[8] While the Seventh Circuit has not specifically held that a serious injury is required for a handcuff claim under the Fourth Amendment, its case law suggests a similar rule. *See, e.g., Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir. 2006) ("Tibbs likely suffered some discomfort and pain from handcuffs that Officer Kooistra applied somewhat too tightly; . . . he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury. Tibbs cites no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations. We agree with the district court that no reasonable jury could find Officer Kooistra's actions were objectively unreasonable."); *see also Braun v. Baldwin,* 346 F.3d 761, 763 (7th Cir. 2003) ("Braun also claims to have been subjected to excessive force in the course of his arrest, mainly because the handcuffs were fastened too tightly, but as there is no indication that his arrest was effected in an unusual or improper manner, the excessive-force claim has no possible merit.") (internal citation omitted). Defendants focus on language in *Tibbs* and other Seventh Circuit cases discussing whether the plaintiff sufficiently alerted the officers to the pain or discomfort he or she was experiencing from the handcuffs through the frequency and/or urgency of his or her complaints about the handcuffs. While perhaps relevant to a Fourth Amendment analysis of the excessive force issue, the Court does not think it is necessary to examine that issue in the Eighth Amendment context where an inmate has not shown any substantial injury from the handcuffs. In that situation, no Eighth Amendment violation occurred even if the inmate repeatedly brought his complaints about the pain he was experiencing from the handcuffs to the attention of the correctional officers in charge.

circumstances that give rise to differing levels of security concerns, *see, e.g., Fisher v. City of Las Cruces*, 584 F.3d 888, 896-99 (10th Cir. 2009), in the prison context, the security interest of the penal institution is always the same and is always high. Thus, in evaluating handcuffing claims in the Eighth Amendment context, courts must be even more skeptical where there is an absence of proof regarding any serious injury, and deference must be "extended to prison officials in acting to insure the proper administration, safety and security of a penal institution." *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). The Supreme Court has noted that this deference "extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 322. If an inmate has not shown anything more than a de minimis injury from the handcuffs, courts (or juries) should not second-guess a prison official's motives for applying handcuffs tightly. An Eighth Amendment claim has both a subjective and an objective component, and no valid claim is stated where a plaintiff has put forth evidence only of the former. *See Lunsford v. Bennett* 17 F.3d 1574, 1579, 1582-83 (7th Cir. 1994). For this reason, Verser's allegations fail to raise a triable issue against Officer Smith on the claim that he violated the Eighth Amendment by tightening the handcuffs. Moreover, because the Court concludes that Officer Smith is entitled to summary judgment on Verser's excessive force claim arising out of Smith's alleged conduct of tightening

the handcuffs, the Court also concludes that Officer Myles is entitled to summary judgment on Verser's claim to hold her liable for Officer Smith's conduct based on a theory of failure to intervene. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation" (citing *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004) (plaintiff could not succeed on his failure to intervene claim because he had failed to establish that guards used excessive force in violation of his Eighth Amendment rights)).

### B.    RETALIATION CLAIM—DEFENDANTS SMITH AND MYLES

The above analysis does not end the inquiry concerning Verser's handcuff claims against two of the correctional officers, Officers Smith and Myles, because Verser also alleges that Smith had a retaliatory motive when he tightened the handcuffs. "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983." *Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir. 1984), *overruled in part on other other grounds, Salazar v. City of Chicago*, 940 F.2d 233, 240-41 (7th Cir. 1991). Prisoners have a constitutional right of access to the courts. *DeWalt*, 224 F.3d at 618. Thus, a prison official may not retaliate against a prisoner because that prisoner filed a lawsuit. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

At the outset, the Court grants summary judgment to Officer Myles on Verser's retaliation claim. Verser seeks to hold Officer Myles liable for this claim

because she "failed to intervene" to prevent Smith's retaliation. *See* R. 155-3 at 8 (Verser Dep.) (admitting that Myles did not retaliate against him but instead went along with Smith's retaliation). Law enforcement officials can be held liable under § 1983 for not intervening in a situation where another officer is violating an inmate's constitutional rights. *See Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005). "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Verser's retaliation claim against Officer Myles fails because Verser has presented insufficient evidence to show that Myles had reason to know that a constitutional violation, *i.e.,* retaliation for Verser's filing of a previous lawsuit, had been committed by Officer Smith. Officer Myles states in her declaration that she had no knowledge about Verser's lawsuit against Malone prior to Verser's claims in this case, R. 155-7 at 2, and, unlike Officer Smith, Verser has not testified that Officer Myles said anything that might suggest otherwise. Verser also has presented no evidence that Myles heard Smith say "this is what you get for suing Malone," or that, if she did hear Smith make this comment, she understood from it that Smith was retaliating against Verser for filing a lawsuit

against another correctional officer. In short, a reasonable jury could not conclude based solely on her being in the vicinity when Smith tightened the handcuffs that Myles knew that Smith was acting in violation of Verser's rights.

Verser's retaliation claim against Officer Smith presents a closer question. The Court previously held that Verser had alleged a chronology of events from which retaliation may be inferred. *See* R. 136 at 14-16 (*Verser*, 2016 WL 3595727, at *6). The Court now concludes, however, that Verser has not submitted sufficient evidence of retaliation to create a disputed issue of material fact on his retaliation claim. "To prevail on his retaliation claim, [Verser] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in [Smith's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation marks and citation omitted). Several courts have noted that, because of "both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Couglin*, 58 F.3d 865, 872 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Gordon v. Bertsch,* 2015 WL 10319307, at *8 (D.N.D. Oct. 30, 2015), *report and recommendation adopted,* 2016 WL 676365 (D.N.D. Feb. 18, 2016); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 346-47

(N.D.N.Y. 2010); *Cameron v. Siddiq,* 2007 WL 4210422, at *4 (M.D. Ala. Nov. 28, 2007).

Verser's testimony concerning his previous lawsuit against another correctional officer named Malone and the comment that Smith supposedly made to him when he tightened the handcuffs is sufficient to establish a disputed issue of fact on whether Verser can satisfy the first and third requirements of a retaliation claim. But Verser has not provided sufficient evidence on the second requirement. As noted, a retaliation claim requires an action that would likely deter First Amendment activity in the future, which necessarily means that not every adverse action gives rise to a claim of retaliation. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is . . , a de minimis level of imposition with which the Constitution is not concerned."); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."). Some adverse actions that have been held to be not constitutionally cognizable include delay in delivery of an inmate's mail, *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373-74 (S.D.N.Y. 2011), verbal harassment, *Tafari*, 714 F. Supp. 2d at 364, and "comments that are merely 'insulting' or 'disrespectful,'" *Lunney v. Brureton*, 2005 WL 121720 at *11 (S.D.N.Y. Jan. 21, 2005), *report & rec. adopted*, 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005).

The Seventh Circuit has held that denial of medical treatment is a deprivation likely to dissuade a reasonable person from engaging in future First Amendment activity. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). But Verser was not denied medical treatment by Officer Smith. Instead, the adverse action Verser alleges Officer Smith took in retaliation for Verser's filing of a lawsuit against another correctional officer was the tightening of his handcuffs. There is no evidence in the record, however, that Verser was subjected to physical restraint to any significant degree more than he would have been had Officer Smith not harbored a retaliatory motive. It is true that "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). Thus, for example, the court held in *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009), that the plaintiff stated a claim where the alleged adverse actions consisted of "delays in his incoming and outgoing mail; harassment by a guard kicking his cell door, turning his cell light off and on, and opening his cell trap and slamming it shut in order to startle him when he was sleeping; unjustified disciplinary charges; and improper dismissal of his grievances." But here, Verser alleges only a single act, not "harassment" like in *Bridges,* which was "by numerous prison employees in a variety of ways over a period of several months." *Id.* Moreover, to qualify as something that would deter an ordinary individual from exercising his constitutional rights, the action must cause

some injury. *See, e.g., Islam v. Goord*, 2006 WL 2819651 at *7 (S.D.N.Y. Sept. 29, 2006) (tampering with mail is not an adverse action because plaintiff "does not allege that he suffered any injury as a result of the alleged tampering"); *Battice v. Phillip*, 2006 WL 2190565 at *6 (E.D.N.Y. Aug. 2, 2006) (dismissing retaliation claim because there was no allegation or evidence to show "any injury as a result of the minor delay in receiving one piece of mail"). The Court already has found that the single act in question was a de minimis use of force from which Verser did not suffer any serious injury. Thus, "[e]ven if intentional, this isolated incident is 'simply *de minimis* and therefore outside the ambit of constitutional protection.'" *Battice*, 2006 WL 2190565 at *6 (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)); *compare Davidson v. Flynn*, 32 F.3d 27, 30 n.1 (2d Cir. 1994) (inmate's claim that correctional officers placed handcuffs on him too tightly and denied him medical care for injuries resulting therefrom, in retaliation for his filing of lawsuits, could not be dismissed on pleadings where inmate alleged he suffered permanent scarring and numbness, but holding that the court's ruling did "not preclude the possibility" that claim may later be dismissed on a summary judgment).

## C.     EIGHTH AMENDMENT CLAIM AGAINST MEDICAL DEFENDANT

Verser's Eighth Amendment claim against Schwarz is based on Schwarz's refusal to honor his medical permit for double cuffing. The NRC is a temporary housing facility located at the Statesville Correctional Center where an inmate is held when he needs to be relocated away from the specific correctional center where

the inmate is assigned within the IDOC system (known as the inmate's "parent institution"). Verser was an inmate at the NRC at the time in question. It is undisputed that when an inmate is temporarily assigned to the NRC, his complete medical records do not accompany him there; they remain at the parent institution. The medical staff at the inmate's parent or transferring facility prepare a "transfer summary," which is supposed to include information about the inmate's active medical permits. Verser's transfer summary did not show that he had an active medical permit. Schwarz attaches a copy of the transfer summary to her declaration to prove this fact, and Verser admits it.

To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *See Farmer*, 511 U.S. at 837 (deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of the facts once the inference could be drawn, that an substantial risk of serious harm exists, and he must also draw that inference"). For purposes of her summary judgment motion, Schwarz concedes that Verser can demonstrate he had an objectively serious medical need. *See* R. 149 at 3-4; *but see* footnote 4. She argues, however, that if an inmate asserts that he has an active medical permit, but the permit is not documented on his transfer summary, a physician assistant is not being deliberately indifferent to that

inmate's medical condition when she directs a correctional officer to disregard a claimed "medical permit" that the inmate says he has from another institution. The Court agrees that if the situation is as Schwarz describes, it is reasonable for the physician assistant to do what Schwarz did here, which is defer to the transfer summary because it is more authoritative than what the inmate says, even if the inmate has a medical permit in his possession, which can be forged or altered. *See* R. 150-1 at ¶ 40 ("Whereas an inmate can erroneously assert the existence of active medical permits, and medical permits can be forged, a transfer summary sheet is considered authoritative regarding the current care an inmate is receiving at his parent institution.").

The evidence shows that Schwarz was informed, via telephone call from Officer Nickerson, that Verser had a medical permit for double cuffing. The medical permit was issued at Menard on March 23, 2012. When Schwarz received this information over the phone, she cross-checked Verser's assertion that he had a medical permit against his inmate transfer summary. Verser's transfer summary did not contain any notations reflecting active medical permits. There is no evidence that Verser enlightened Schwarz as to why the medical permit in his possession had been issued, or otherwise informed her about any medical condition underlying that permit. There is also no evidence that Verser complained to her about an existing injury or advised her that he was suffering from a particular medical issue. Rather, when given the opportunity (at the time the phone call was placed to Schwarz),

Verser said nothing to her. As the medical permit from Menard contained no information about any medical condition, and Verser admits that he did not provide any more detail to her, Schwarz could not have been subjectively aware of any serious medical need. To the extent that Schwarz was aware that Verser claimed he had a medical need, the Court agrees that Schwarz did not act with reckless indifference to that claimed need when Verser's medical permit was not documented on his transfer summary.

Verser argues Schwarz should have examined him before denying a medical permit for double cuffing, and cites to an IDOC grievance letter attached to his complaint as Exhibit A. That letter states in relevant part as follows:

> Dear Mr. Verser:
>
> This will finalize your grievances received on May 15, and 31, June 5 and 11, 2012, regarding Medical (denied treatment for wrist and abdominal pain, pain medication, colonoscopy and medical permit); . . .
>
> Offender Verser alleges he was denied treatment for his injured wrist and abdominal pain while on court writ . . . He also claims he did not receive his pain medication . . . Offender Verser grieves CO Johnson and CO Smith did not honor his medical permit for double cuffing on May 10, 2012 while being escorted on a court writ.
>
> Records indicate Offender Verser had a permit for medical restraints dated January 12, 2012 to January 12, 2013 from Stateville CC for arthritic shoulder.
>
> This office remanded Offender Verser's grievance to Stateville Correctional Center for a corrective action plan of procedures for medical treatment of offenders on writ. Per policy at Stateville CC, Offenders who indicated they have a permit for medical restraints are reviewed by the

> Doctor at the current facility, who determines if the restraints are necessary.
>
> Per Stateville NRC staff, on Tuesday prior to the statewide transfer all writ medical documentation is sent to the Parent facility. The medical documentation sent from Menard CC to Stateville NRC for the April 4-May 16 2012 writ did not indicate Offender Verser was on Elavil or Zantac, . . .
>
> . . . .
>
> … The portion of the grievance regarding the medical permit for cuffing is affirmed. Warden Lemke is to ensure security staff are instructed on the procedures for medical cuffing.

R. 5 at 7-8. A second grievance letter attached to the complaint addresses a "grievance received on September 26, 2012 regarding Staff Conduct (did not honor medical permit for cuffing) . . . while at Stateville NRC in July, 2012." R. 5 at 10. Although the second grievance letter acknowledges that Verser's records indicated that a medical permit for medical restraints from Stateville Correctional Center was on file, it denied Verser's grievance because his "allegation that [the medical permit] was not honored" could not be confirmed. *Id.*

These letters are hearsay and cannot be relied on to establish the truth of the matters asserted therein. But even if the Court were to consider them, a reasonable jury could not decide based on them that Schwarz was deliberately indifferent to Verser's medical needs. The letters indicate that Verser had a permit for medical restraints from *Stateville,* and the first letter states that the permit was for an arthritic shoulder, not a wrist injury. Neither letter says anything about a medical permit issued by *Menard* for double cuffing, which is the permit Verser relies on

27

here for his claim against Schwarz. Moreover, nothing in the letters contradicts Schwarz's testimony that Verser's transfer summary did not contain any information about the Menard double cuffing permit.

Verser argues that the letters establish that Schwarz was obligated to examine him under "policies in place at Stateville Correctional Center." R. 159 at 6. But the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982); *see also Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (a violation of a state actor's policies or regulations "is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Moreover, the references in the grievance letters to Stateville policy regarding the proper procedures when an inmate claims a need for medical restraints do not provide an adequate basis for understanding the full substance of the policy or procedures, and Verser has not offered any additional evidence to fill in the missing details. Thus, it is impossible to assess those policies (assuming they exist) in light of the facts of this case. For instance, the first grievance letter refers to an examination by a doctor, not a physician assistant. Moreover, the letter does not give any indication as to the timing of when the examination is supposed to have occurred. It also is not clear what the relationship is between the term "medical restraints" and "medical permits" and whether Statesville's policy addresses one or both of those things.

More important, it is not clear from the letter how the Statesville policy, which appears to apply to Statesville permits for use of medical restraints, would account for a medical permit issued by a parent institution of an inmate temporarily assigned to the NRC. Based on Schwarz's declaration, it seems possible that Statesville's policy on medical restraints might be satisfied if an inmate already was examined by a doctor at his parent institution and received a medical permit from that doctor, in which case cross-referencing the inmate's transfer summary to see if a doctor from another institution had issued a medical permit would be sufficient. In sum, given the lack of information about the policy referenced in the grievance letter and how it would fit into the facts of this case, no reasonable jury could conclude that Schwarz violated the policy in question when she relied on the transfer summary in the face of Verser's contrary claim to a medical permit for double handcuffing issued by his parent institution.

For the reasons discussed above, the Court finds that Verser has failed to demonstrate that a triable issue exists as to whether Schwarz was deliberately indifferent to his serious medical needs when she failed to honor his proffered medical permit. As such, summary judgment is granted in Schwarz's favor.[9]

_____

[9] In the alternative to the above, the Court agrees with Schwarz that Verser has failed to show a causal connection between her refusal to honor the Menard medical permit with any injuries Verser may have suffered to his hand or wrist. In support of that conclusion, the Court adopts its previous discussion of Verser's failure to produce evidence sufficient for a jury to find in his favor that the cuffing incident in this case caused any injury or additional damage to his hand or wrist beyond the injuries he already sustained after the 2009 incident.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment (R. 148, 153) are granted.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated:  February 9, 2016